Walker *v.* Cheever.

WALKER *v.* CHEEVER.

If a demand, whether contingent or not, against the estate of a person deceased, is not presented to the executor within two years after the grant of administration, it will be barred.

It is not enough that the demand was presented within two years after the right of action accrued.

If the executors, by their absence from the State, have prevented the presentment of the claim, it will not be barred; but a temporary absence,

Walker *v.* Cheever.

which did not prevent the holder from presenting his claim by the exercise of reasonable diligence, will not extend the time limited by the statute.

No action can be maintained against an executor which is not commenced within three years after the grant of administration, unless, in the case of contingent claims, the executor shall have been required, by a decree of the court of probate, to reserve in his hands the necessary funds to meet the claim, when the contingency shall happen.

The ordinary limitation applies to actions against executors who are residuary legatees, and have given bonds for the payment of debts and legacies, as in other cases.

In Equity. The bill, which is dated July 5, 1856, alleges that the complainants and others, with C. A. Cheever, of whose will the defendants are executors, made their joint and several note for $10,000, to the Boston and Maine Railroad, dated April 26, 1852, for the benefit and accommodation of the Portsmouth and Concord Railroad, which received the money thereon. C. A. Cheever died, testate, about September 1, 1852, naming the defendants as his executors and residuary legatees. The will, directing all the debts of the deceased to be paid, was proved November 9, 1852, and the defendants gave bonds to pay debts and legacies. On the first day of July, 1854, the complainants paid the whole note, the interest having been paid by the Portsmouth and Concord Railroad. Forthwith after the payment, the complainants presented to the defendants a claim for C. A. Cheever's proportion of the money, and demanded payment. Two other signers have paid their shares, and suit has been commenced against another, who has not contributed. Since the will was proved, J. H. Cheever and D. W. Cheever, two of the defendants, have at all times resided out of the State, and A. H. Cheever, the other defendant, has resided out of the State a year and a half, so that the complainants had no opportunity to prosecute their claims.

A demurrer to the bill was overruled.

The first answer admits all the statements of the bill,

except that it denies that the complainants exhibited their demand to the defendants within two years after probate of the will, or at any time, and sets up as a defence section 2 of chapter 161 of the Revised Statutes. The answer also avers that D. W. Cheever and A. H. Cheever, since the probate of the will, have always resided in this State, and the complainants had opportunity to exhibit their demand, and to prosecute it against them, but failed to do so till the filing of the bill, and the defendants insist on the statute of limitations, section 5, chapter 161 of the Revised Statutes. The answer also alleges that the complainants were officers of the Portsmouth and Concord Railroad at the time the note was signed; C. A. Cheever signed it at their request, to raise money to complete the railroad, and on their assurance that he, or his estate should not be called upon to pay it, but that it should be paid at maturity from the first receipts into the treasury of the road; that since, both before and after its maturity, there have been receipts into the treasury of the railroad more than enough to pay it, but the complainants failed to pay it, and have appropriated the receipts of the road to their own, or other unknown uses. The defendants have fully administered the estate of C. A. Cheever. The complainants paid the note by giving their own note, July 1, 1854, and obtained from the Portsmouth and Concord Railroad a mortgage, by which they are fully indemnified for their liability.

On filing this answer the complainants amended their bill by adding an averment, in the language of the statute, (Revised Statutes, chapter 181, section 9,) that D. W. Cheever and A. H. Cheever have " *been absent from* as well as resided out of the State much of the time since the probate of the will of C. A. Cheever."

An amended answer sets forth that J. H. Cheever has resided out of the State ever since the probate of the will, but he has been in the habit of visiting Portsmouth to

attend to business and to see his mother, several times a year, and has remained each time from four or five days to a week or more, which the complainants knew; that between the probate of the will and filing this bill, D. W. Cheever and A. H. Cheever have always resided in Portsmouth. A. H. Cheever made her only home and domicil there; but in the winter of 1853–4 she was in Boston four months, in the winter of 1854–5 about four months, in the spring of 1856 about two weeks, making eight months and two weeks in all. During her absence she carried only her necessary wearing apparel, leaving all her real and personal property in Portsmouth, and her residence at Boston was merely temporary; all of which the complainants well knew. D. W. Cheever was in Portsmouth from November, 1852, to May, 1853. He then went to Europe and remained till October, 1854, pursuing his medical studies. In November, 1854, he was at his home in Portsmouth. After that time he was at the medical school in Boston, except the month of August, 1855. Besides this he made frequent short visits at Portsmouth, and all this the complainants knew. C. A. Cheever left a large amount of property, well known to the complainants. The administration of the estate has never been suspended, nor have the defendants retained in their hands property to pay this demand. The answer then sets forth other matters of defence, which are omitted, as not material to the points decided. The evidence and arguments relative to these matters of defence are for the same reason omitted.

A replication was filed, and proofs taken, of which only that relating to the presentment of the claim is here material.

Thomas L. Tullock testified that he was a signer of the note to the Boston and Maine Railroad. On the 27th of March, 1855, at the request of A. W. Haven and J. W. Emery, who, with five others of the signers, had paid the

note, he presented to J. H. Cheever, at Boston, a copy of the note, with a notice that the note had been paid by Messrs. Haven, Walker, and others named, and that they expected the estate of C. A. Cheever to pay its proportion of the note; and being employed by the complainants he conversed several times with J. H. Cheever upon the subject. A. W. Haven testified that he sent a written statement of the demand, a copy of which is annexed to his deposition, to J. H. Cheever, and received an answer from him acknowledging its receipt, dated June 27, 1856.

Objection was made to this evidence, because the witnesses were interested, and Mr. Haven a party to the suit.

*Hatch* and *Emery*, for the complainants.

*Towle* and *Christie*, for the defendants.

BELL, C. J. It is objected to the complainants' recovery in this case, that the demand set up in the bill was never exhibited to the executors, or not within two years from the grant of the letters testamentary; and that the bill was not filed within three years after the original grant of administration.

As to the fact of the presentment of the demand to the executors, we think the evidence of the complainants outweighs the answer. Tullock testifies that he presented a written demand to John H. Cheever, one of the defendants, by direction of the complainants, on the 27th of March, 1855, and Haven's testimony seems to establish a like demand, June 25, 1856. Assuming the competency of these witnesses, they prove the fact that the claim was exhibited. No objection is suggested as to the manner of presenting it, and it seems to us sufficient within the decisions. *Mathes* v. *Jackson*, 7 N. H. 259; *Tibbetts* v. *Tilton*, 31 N. H. 273; *Little* v. *Little*, 36 N. H. 225.

But this evidence does not prove an exhibition of the

claim within two years after the original grant of administration. There is no suggestion of any suspension of the administration, which would give further time. The action consequently cannot be maintained, unless it can be saved from the operation of the statute on one of the grounds set up by the plaintiffs, namely : (1.) That, from the nature of the claim, no presentment was necessary ; (2.) That the claim was exhibited within two years after the right of action accrued; (3.) That the executors were absent from the State, so as to prevent an exhibition; or, (4.) That the executors, being residuary legatees, having given bond to the judge of probate to pay the debts, have thus made the debt their own, and are therefore not entitled to take advantage of any bar under the statute, except the general statute applicable to the party's own debt.

1. It is contended that no demand or exhibition of the plaintiffs' claim was necessary, and the case of *Sibley* v. *McAllister*, 8 N. H. 389, and other cases, are cited in support of the position. In this case there were two points in controversy : the liability of the surety to the creditor, in regard to which it was held that though the remedy of the creditor against the estate was lost by reason of the failure to present the claim to the executor, the remedy of the creditor against the surety was not lost, because it was the duty of the surety, and not of the creditor, to make available the remedy against the estate. The other question related to the right of the surety to recover against the administrator of the principal, after paying the debt, and it was held that he might recover, though the original note was not presented within two years, through his own fault, and though the claim for money paid did not accrue to him within the two years, from his neglect to pay the debt, as he ought to have done. The reasoning of the court turned upon the first of these points, and the single remark, stating the surety's right to recover, is all that is

said on that subject. There is nothing in the case which shows upon what grounds the doctrine is supposed to be tenable. The cases cited as supporting this, *Peaslee* v. *Breed*, 10 N. H. 489; *Bowman* v. *Page*, 11 N. H. 431, and *Whipple* v. *Stevens*, 19 N. H. 151, were not cases against an executor or administrator, and therefore do not sustain the case as to the only point material here. In that case the demand for money paid was presented within two years after the cause of action accrued, but not within two years after the grant of administration. The case would be directly in point for the plaintiff, if it were not for the changes of the statute. By the statute then in force, (Laws of 1830, p. 78), contingent claims, upon the contingency happening after two years, might be exhibited before the final settlement and distribution of the estate, while by the Revised Statutes, chapter 161, sections 2 and 3, no action against an administrator can be sustained, unless the demand shall have been exhibited to him within two years after the original grant of administration, without any exception, unless the administration is suspended.

2. Before the Revised Statutes the time when the right of action accrued was made material in the case of contingent claims. But there is no provision of our existing law by which that is now of any importance. The action is barred if the claim is not presented within two years from the original grant of administration, deducting the time of the suspension, if any. The point of time on which all the limitations of the chapter depend is the original grant of administration.

3. An administrator, by his own wrongful acts, may defeat and prevent the presentment of a claim, and in such case he could not take advantage of his own wrongful act.

If, therefore, an administrator should, shortly after his appointment, leave the State, and remain absent until the expiration of the period of two years, he could not take advantage of the want of presentment of a claim during

that time. The question in issue, however, would not be, as it is under the general statute for the limitation of actions, How much time the defendant *was absent from and residing out of the State*, in order that the time of such absence may be deducted, in computing the period of limitation? but it would be, Has the administrator, by his absence from the State, prevented or defeated the exhibition of the party's claim, so that, by reasonable diligence, he could not present it?

The answer on this point is not controlled by other testimony. By that it appears that John H. Cheever resided out of the State the whole two years, being an occasional visitant at Portsmouth for a few days only. If he was the sole executor, it might be material to inquire whether his visits were so known to the complainants as to afford them reasonable opportunity to present their claim to him.

David W. Cheever was at Portsmouth till May, 1853, and in November, 1854. If he was the sole executor, the inquiry might be material whether his return for the few days pending the expiration of the two years, in November, 1854, was so well known to the complainants as to give them a reasonable opportunity to present their claim to him.

The other defendant, the executrix, resided in Portsmouth as her only home, but she was absent on a visit in Boston, four months, in the winter of 1853-4, and four months in the winter following. This claim could have been effectually exhibited to her at any time during the two years, except four months in the winter of 1853-4. We think it cannot be contended under this evidence that the defendants have prevented or defeated the exhibition of this claim by their absence. It must have been in the power of the complainants to present their claim, without the exertion of any special diligence.

4. The bond to the judge of probate to pay debts and

legacies, is no where declared in the statutes to affect the duties or obligations of the executors towards those having claims against the estate, as to the presentment of those claims. A uniform rule is laid down, that no action shall be maintained against an executor or administrator unless the demand shall be exhibited to him within two years from the original grant of administration, deducting the time the administration may be suspended. No exception is made or indicated in the statute. No reason appears to us to call for such exception. The general policy of the law aims to secure the early and prompt settlement of the estates of parties deceased, and this policy applies with equal force to the case of estates where the residuary legatees are executors, as to other cases.

The bond to pay debts and legacies, besides being made to a third person, is not an engagement to pay any specific debt, but only such debts as he should be legally bound to pay. The debts remain as before, subject to all just defences, and the executor will be held liable on his bond for no debt on which an action could not be supported, founded directly on the claim itself. The case of *Holden* v. *Fletcher,* 6 Cush. 235, hereafter cited to another point, seems to us, in principle, equally decisive of this point.

II. It is insisted for the defendants that this action cannot be maintained, because it was not commenced within three years after the original grant of administration. The bill was filed July 5, 1856. The period of three years from the grant of administration expired November 9, 1855. There is no suggestion of any suspension of the administration, and no pretence that the claim had been filed in the probate court, and a fund reserved in the hands of the executor for its payment. As the statutes (Rev. Stat., ch. 161, secs. 5 and 6) are explicit that " No suit shall be maintained against any administrator, for any cause of action against the deceased, unless the same is commenced within three years," &c., this objection seems fatal to the

Walker v. Cheever.

action, unless some exception can be established to this general rule.

1. The plaintiffs insist that the cause of action in this case did not accrue to the complainants till July 1, 1854, when they paid the deceased's share of this note, and no limitation could begin to run till that date; that the provisions of the statute, prescribing the exhibition and limitation of claims and suits, relate only to debts which existed at the death of the testator, and are inapplicable, both in their letter and in their reason, to claims which, like the present, have arisen after his decease. But we think the policy of the law applies with equal force to the case of claims which have accrued against the estate after the decease, in consequence of the acts or stipulations of the deceased in his life, as to those where the right of action arose before his death. Both, we think, are causes of action against the deceased, within the meaning of the statute. The former fall within the class of demands not due, or depending on a contingency, which the statute requires to be filed in the court of probate, and a fund reserved for their payment. Though the general statute of limitations limits the commencement of suits to a certain time after the right of action accrues, yet there is, in the nature of things, no reason why the limitation may not be made to commence from another point of time, as the grant of administration; nor why the right of action should not be made to depend upon the performance of certain requirements before the right of action accrues, as, for example, the presentment of the claim to the administrator within two years after administration granted, or the filing of the claim in the court of probate, and a decree reserving a fund for its payment. The statute, on these points, seems to us entirely clear and unambiguous.

2. It is insisted that the limitation, applicable to suits against executors and administrators generally, has no application to the case of executors who are residuary lega-

tees, and have given bond to the judge to pay the debts and legacies.

In the case of *Holden* v. *Fletcher*, 6 Cush. 235, this question arose. By the Massachusetts statutes an executor is not liable to any suit after four years from the grant of administration, unless assets come to his hands after the four years have expired, or are retained by him, by order of the court of probate, to satisfy the claim. An executor, as residuary legatee, had given bonds to pay debts and legacies, and in an action against him, founded on the covenant of warranty in a deed of the testator, which was not broken until after the four years expired, it was contended that by giving such bond he had made himself liable to the payment of all the debts, though they were barred by the statute in terms at the end of four years. But the court held that the bond must be construed, like the usual bond given by the executor or administrator, with reference to the other provisions of law concerning his liability, and that the limitation of four years applied as well to cases where such bond had been given as in the case of the ordinary administration bond. This decision seems to us entirely reasonable and just, and the principle is decisive of the question.

These questions, relating to the exhibition of the claim within two years, and the commencement of the action within three years after the grant of administration, arose in *Cutter* v. *Emery*, 37 N. H. 567, and it was held that the action could not be maintained unless the demand was exhibited within two years, and suit brought within three.

*Bill dismissed.*